UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Christopher Terrill Radford,<br><br>              Plaintiff,<br><br>v.<br><br>Commissioner of Social Security,<br><br>              Defendants. | No. 1:25-cv-00828-GSA<br><br>**OPINION & ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF DEFENDANT COMMISSION OF SOCIAL SECURITY AND AGAINST PLAINTIFF**<br><br>(ECF No. 14, 17) |

### I.    **Introduction**

On July 9, 2025, Plaintiff Christopher Terrill Radford filed a complaint in the Court. Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security denying his applications for Social Security Disability Insurance Benefits pursuant to Title II of the Social Security Act, and also sought review of the Commissioner's denial of his application for Supplemental Security Income pursuant to Titles II and XVI, respectively.

### II.    **Procedural Background**

On November 2, 2022, Plaintiff applied for Social Security Disability Insurance Benefits and Supplemental Security Income. In both his application for SSDI and SSI, Plaintiff alleged that the onset of his disability was March 16, 2022. These claims were denied initially on March 13, 2023, and upon reconsideration on February 26, 2024. Thereafter, Plaintiff filed a written request for hearing received on March 13, 2024. On July 31, 2024, the ALJ held a telephone hearing.

On August 30, 2024, the ALJ issued an unfavorable decision denying Plaintiff's disability claim.  AR 7–26.  On May 27, 2025, the Appeals Council denied Plaintiff's request for review making the ALJ's decision the final decision of the Commissioner. AR 1–5.  Plaintiff now seeks judicial review of the Commissioner's final decision under 42 U.S.C. §§ 405(g), 1383(c)(3).

**III.     The Disability Standard**

Pursuant to 42 U.S.C. §405(g), this court has the authority to review a decision by the Commissioner denying a Claimant disability benefits.  "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted).  Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971).  It is more than a scintilla, but less than a preponderance.  *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (internal citation omitted).

When performing this analysis, the court must "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Social Security Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citations and quotations omitted).  If the evidence could reasonably support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision. *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted).  "[T]he court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).

To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy,

regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. 42 U.S.C. §1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for evaluating a Claimant's alleged disability. 20 C.F.R. §§ 416.920(a)-(f). The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the Claimant is or is not disabled. 20 C.F.R. §§ 416.927, 416.929.

Specifically, the ALJ is required to determine: 1- whether a Claimant engaged in substantial gainful activity during the period of alleged disability; 2- whether the Claimant had medically determinable "severe impairments"; 3- whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; 4- whether the Claimant retained the residual functional capacity ("RFC") to perform past relevant work; and 5- whether the Claimant had the ability to perform other jobs existing in significant numbers at the national and regional level. 20 C.F.R. § 416.920(a)-(f). While the Plaintiff bears the burden of proof at steps one through four, the burden shifts to the commissioner at step five to prove that Plaintiff can perform other work in the national economy given her RFC, age, education and work experience. *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014).

**IV.   The ALJ's Decision**

At step one, the ALJ found that Plaintiff did not engage in substantial gainful activity since the alleged onset date of March 16, 2022. AR 12. At step two, the ALJ found that Plaintiff had the following severe impairments: diabetes mellitus, left lower extremity ganglion cyst, arthritis, neuropathy and gout. AR 13. The ALJ also found at step two that Plaintiff had non-severe impairments of hypertension, vitamin D deficiency, depression, generalized anxiety disorder and a history of borderline intellectual functioning. AR 13. The ALJ found that that these impairments were not severe as they caused no more than minimal restriction in the Claimant's ability to work. AR 13.

At step three the ALJ found that Plaintiff did not have an impairment or combination thereof that met or medically equaled the severity of one of the impairments listed in 20 C.F.R. Part 404,

Subpart P, Appendix 1. AR 14.

Prior to step four, the ALJ evaluated Plaintiff's residual functional capacity (RFC) and concluded that Plaintiff had the RFC to perform light work as defined in 40.1567(b) and 416.967(b) with the following limitations: can perform postural activities no more than frequently (2/3 of an 8-hour day per SS 83-10), and cannot perform work at unprotected heights or around moving mechanical parts. AR 15–19.

At step four, the ALJ found that Plaintiff could not perform his past relevant work as a deli cutter/slicer (DOT# 316.684-010, light SVP 2) (Exhibit 8D; testimony). AR 19. At step five, relying on the VE's testimony, the ALJ found that considering the Plaintiff's age, education, work experience and RFC the Plaintiff could perform the following jobs existing in significant numbers in the national economy: housekeeping cleaner (DOT# 323.687-014, light SVP 2), of which there are 180,000 jobs in the national economy, and assembler (DOT# 706.684-022, light SVP 2) of which there are 20,000 jobs in the national economy. AR 20.

The ALJ also noted that even if Plaintiff's RFC was limited to sedentary work, the vocational expert testified that there would be 20,000 jobs in the national economy. AR 20. Accordingly, the ALJ concluded that the Plaintiff was not disabled since the alleged disability onset date of March 16, 2022. AR 20–21.

**V.     Summary of Medical Evidence**

Plaintiff was treated for diabetes in January 2022, at which point it was getting worse and his treatment regimen consisted of diet changes, medication, insulin and blood sugar monitoring AR 365.

The following month his diabetes was stable, though his A1C was high. Id. 373, 377. In March of 2022, his diabetes was also described as stable. Id. 387. Plaintiff sought left foot treatment in June 2022. The clinician noted tenderness to touch, and the x-ray showed degenerative changes. AR 342; 357. His condition was noted as stable though his A1C levels remained high at 14. AR 394, 419.

In August 2022, Plaintiff saw a podiatrist for level 7/10 left foot pain. AR 338. On exam, he displayed left foot tenderness, mildly painful ROM, and tenderness in the dorsal midfoot. AR

1  340. The provider administered a steroid injection. AR 341. He was advised to elevate his foot.
2  AR 407. Diabetes was stable in September 2022. AR 415. Plaintiff was advised not to do hard
3  tasks when in severe pain, and to take breaks. AR 419. Plaintiff had a diabetes checkup in October
4  2022 which found that his A1C was 13.3, slightly less than previous visits showing 14, but was still
5  high. AR 421; AR 426. The exam by Podiatry also noted that he had "minimal to no improvement
6  with the injection," nor with Mobic and Voltaren gel. Pain was 9/10 with ambulation, painful ROM
7  at the left first metacarpal joint, tenderness to the dorsal midfoot. Plaintiff was prescribed a CAM
8  boot to wear when sitting, standing and walking. AR 338.

9        In the same month the podiatrist noted Plaintiff was using the cam boot and that any pressure
10 was painful. The exam noted first tarsometatarsal (TMT) joint edema, tenderness to the dorsal mid
11 foot and first MPJ, pain with range of motion and diffuse tenderness. AR 334. Podiatry
12 recommended TMT arthrodesis (fusion), but it was deferred because Plaintiff's A1C would inhibit
13 healing, though podiatry indicated he would be a candidate for another steroid injection. AR 335

14       In December 2022, symptoms and examination findings were unchanged. AR 331. An x-
15 ray noted scattered degenerative changes. AR 331. Treatment regimen was unchanged. His A1C
16 was still high at 11.1% but improved from prior visits which noted 14 and 13 levels. AR 331. Left
17 knee pain with walking and standing was also noted the same month. AR 436. In addition, Plaintiff
18 was diagnosed with "moderately severe depression," and an anxiety screening test recorded severe
19 anxiety. AR 438–39.

20       Symptoms and findings were unchanged the following month as to joint pain, diabetes and
21 A1C. AR 447. Plaintiff was down, depressed or hopeless nearly every day, was anxious, struggled
22 with concentration, was easily startled, and had excessive worry and insomnia. AR 563.

23       March 2023 podiatry notes reflect unchanged findings and symptoms of considerable left -
24 midfoot pain, use of the cam boot, first TMT joint tenderness, left dorsal midfoot tenderness and
25 mild surrounding edema. AR 478–80.

26       In a May 2023 diabetes follow up it was noted that he "did not use medication, or education
27 materials." AR 523. The treatment notes reflect issues with his housing and taking insulin, which
28 was not taken daily. AR 531. Unchanged symptoms and clinical findings were noted in July 2023.

AR 474–76.  As to the possibility of surgery, the clinician noted his recent A1C was 9 to 10%, but it should be closer to 7% for surgery.  AR 477.

A1C was high at 12.5 in August 2023.  AR 520.  In January 2024, foot imaging and examination findings were unchanged.  AR 605.  This was equally true in February 2024 with the addition of redness, hotness and swelling, and he reported inability to wear close toed shoes.  AR 609.

An MRI taken on February 13, 2024 of Plaintiff's left foot showed an "enlarging soft tissue mass with bony erosion, destruction seen at the tarsometatarsal joint."  AR 612.  Due these findings and symptoms the podiatrist recommended surgery, namely left first TMT joint arthrodesis with surgical excision of mass.  AR 613.

## VI. Summary of Subjective Complaints

Plaintiff completed a function report in January 2024. (AR 266–73).  He noted difficulty standing and walking due to foot pain, difficulty with ADLs and that household tasks took longer than normal and required assistance from others.  AR 267–69.  It was further noted that when Plaintiff tried to stand/walk for 30 minutes his foot pain usually became intolerable after 5 to 10 minutes.  AR 271.

At the July 2024 hearing, Plaintiff testified as follows: he lived in a homeless shelter and with friends before that  (AR 44–45); he can't stand on his feet for very long due to consistent foot swelling which he felt was getting worse  (AR 48–50); he used a walking boot daily  (AR 51);  he could stand up to 30 minutes and struggles with sitting  (AR 52);  his daughter helps him with shopping (AR 56); and he has trouble complying with his diabetes treatment due to his homelessness  (AR 49–50).

## VII. Issues Presented

Plaintiff asserts two claims of error: 1- "The ALJ failed to provide clear and convincing reasons for discounting Plaintiff's statements of pain and dysfunction," MSJ at 6–9; and 2- "The ALJ erred in not considering Plaintiff's 'mild' mental impairments in the RFC."  MSJ at 10–13

### A. Subjective Complaints
#### 1. Applicable Law

6

An ALJ performs a two-step analysis to determine whether a Plaintifft's testimony regarding subjective pain or symptoms is credible. *See Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014); Smolen, 80 F.3d at 1281; S.S.R 16-3p at 3. First, the Claimant must produce objective medical evidence of an impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. *Garrison*, 759 F.3d at 1014; *Smolen*, 80 F.3d at 1281–82. If the Claimant satisfies the first step and there is no evidence of malingering, the ALJ must "evaluate the intensity and persistence of [the Claimant's] symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities." S.S.R. 16-3p at 2.

An ALJ's evaluation of a Claimant's testimony must be supported by specific, clear and convincing reasons. *Burrell v. Colvin*, 775 F.3d 1133, 1136 (9th Cir. 2014); *see also* S.S.R. 16-3p at *10. Subjective testimony "cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence," but the medical evidence "is still a relevant factor in determining the severity of Claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); S.S.R. 16-3p (citing 20 C.F.R. § 404.1529(c)(2)).

In addition to the objective evidence, the other factors considered are: 1- daily activities; 2- the location, duration, frequency, and intensity of pain or other symptoms; 3- precipitating and aggravating factors; 4- the type, dosage, effectiveness, and side effects of any medication; 5- treatment other than medication; 6- other measures the Claimant uses to relieve pain or other symptom; and 7- Other factors concerning the Claimant's functional limitations and restrictions due to pain or other symptoms. See, 20 C.F.R. § 416.929(c)(3).

### 2. **Analysis**

Plaintiff first argues as follows:

> This case concerns a Plaintiff who had severe impairment to his ability to walk and stand due to arthritis, gout, and a ganglion cyst in his left foot. Plaintiff also suffered from diabetes. Plaintiff consistently reported significant pain symptoms to his physicians, and diagnostic testing confirmed his impairments. The ALJ failed to provide clear and convincing reasons for discounting Plaintiff's statements of pain and dysfunction. Although the ALJ found Plaintiff's statements inconsistent with the record, he provided nothing more than boilerplate reasoning in support of this

finding. Beyond being factually unsupported, the finding is not legally sufficient. A boilerplate finding, without more, is not clear and convincing.  MSJ at 6.

Here, Plaintiff distills his symptoms and diagnoses but then relies on a conclusory assertion that the ALJ failed to meet the applicable legal standards.  However, Plaintiff's diagnoses and associated symptoms don't create a rebuttable presumption that he is disabled.

Plaintiff continues:

> Where, as here, objective medical evidence in the record established underlying impairments that could reasonably be expected to produce Plaintiff's alleged pain symptoms, the ALJ could only reject Plaintiff's symptom statements by offering "specific, clear and convincing reasons" for doing so. See Trevizo v. Berryhill, 871 F.3d 664, 678 (9th Cir. 2017) (quoting Garrison v. Colvin, 759 F.3d 995, 1014-15 (9th Cir. 2014)). The clear and convincing standard is "not an easy requirement to meet," rather, it is "the most demanding required in Social Security cases." Id. "General findings are insufficient" and "the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." Brown Hunter v. Colvin, 806 F.3d at 493-94 (9th Cir. 2015). The ALJ has not done so.  MSJ at 7.

But again, Plaintiff recites the applicable legal standard that an ALJ must comply but offers little more than a generalized assertion that "the ALJ has not done so."  Just citing this legal standard is not particularly helpful as Plaintiff does not sufficiently describe how it is applicable to Plaintiff's individual situation.  Moreover, Plaintiff's generalized argument is not sufficiently tailored to the specific facts of his individual condition.

Next, Plaintiff provides the same discussion of subjective complaints set forth in his factual summary as follows: 1- significant foot pain due to severe swelling; 2- trouble standing and walking; 3- household tasks take far too long; 4- strives for 30 minutes of standing/walking but fails after 5-10 minutes;  and, 5- swelling is constant, worsening and he needs a walking boot. MSJ at 7; AR 48–51.

To begin, as both the Defendant and the ALJ emphasized, despite Plaintiff's testimony that his left foot was always swollen "like [an] elephant foot," progress notes often indicated mild or no edema, as the ALJ noted. AR 16 (citing AR 330–31, 334, 369, 467, 535, 573, 605, 612).

In addition, despite Plaintiff's testimony that he could stand less than 30 minutes at a time and couldn't lift and carry a case of water or soda (AR 52, 55), progress notes reflect steady gait and full motor strength.  AR 332–34, 342–43, 451, 509.

Next, it is worth addressing the ALJ's reliance on treatment notes which indicated Plaintiff was not taking his diabetic medication as prescribed. AR 48–50; AR 16–19 (citing AR 370, 391, 407, 512-13, 523, 526, 528, 537, 579, 583-84, 587). Plaintiff contends that the ALJ failed to consider that unstable housing was a causal factor impacting his ability to comply with his diabetic treatment/insulin regimen. Plaintiff contends that his physician made such a statement at a May 9, 2023 visit.  MSJ at 9 (citing AR 531).  However, a closer examination at the history of present illness (HPI) at this visit actually shows the following:

> The problem is stable. Risk factors include: African American race. Patient is compliant with follow-up. Patient did not use medication, or education materials. Managing with: Diet, Oral medications and Insulin.  Pertinent negatives include blurred vision, burning of extremities, chest pain, constant hunger, frequent infections, urinary frequency, hypoglycemic episodes, increased fatigue, polydipsia, slow healing wounds / sores and weight loss.  Additional information: <u>Unstable housing. Not taking insulin daily.</u>  basaglar: 28U and Admelog:  25U.

AR 531 (emphasis added).  Here, the physician's language does not suggest a causal connection. Plaintiff also cites various caselaw on the subject.  MSJ at 9–10 (citing M.H. v. Kijakazi, 2023 WL 4745726, *8 (C.D. Cal. 2023) (ALJ erred in discounting claimant's symptom testimony when "failing to consider the significant ways in which homelessness could have inhibited Plaintiff's ability to comply with medical treatment"); Stonecipher v. Colvin, 2014 WL 6933348, *7 (E.D. Cal. 2014) ("Plaintiff <u>offered good reasons for not taking the medication as prescribed</u> - i.e., lack of funds and, because he is essentially homeless, he often lacks a good place to keep the medication") (emphasis added).  However, Plaintiff's cited caselaw is not controlling or altogether applicable here.  The hearing transcript simply references non-specific "issues with compliance due to homelessness."  AR 49–50.  For example, in contrast to the Plaintiff in

9

Stonecipher, there is no indication here that lack of funds or storage options were an impediment.

Further, Plaintiff contends that his non-compliance with diabetes treatment was unrelated to his foot impairment. MSJ at 8–10. To the contrary, Plaintiff's podiatrist noted that when considering surgery to his foot, Plaintiff's most recent A1C was around 9 or 10%, but that number needs to be closer to 7% for surgery. AR 477 (emphasis added). Elsewhere, his providers explained that due to his "uncontrolled hemoglobin A1C, which would inhibit healing," foot surgery was deferred. AR 335 (emphasis added).

In sum, the ALJ did not err in relying to some extent on Plaintiff's non-compliance with diabetes treatment. Failure to follow a prescribed course of treatment undermines allegations of disability. See Chaudhry v. Astrue, 688 F.3d 661, 672 (9th Cir. 2012).

Lastly, ALJ's remaining reasoning for rejecting Plaintiff's symptom complaints was sufficiently clear and convincing for the reasons set forth above.

### B. RFC Generally; Mild Impairments

#### 1. Applicable Law

Before proceeding to steps four and five, the ALJ determines the claimant's residual functional capacity (RFC) which is "the most [one] can still do despite [his or her] limitations" and represents an assessment "based on all the relevant evidence." 20 C.F.R. § 416.945(a)(1). The RFC must consider all of the claimant's impairments, severe or not. 20 C.F.R. §§ 416.920(e), 416.945(a)(2). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

#### 2. Analysis

Plaintiff first contends as follows:

There is evidence in the record that Plaintiff experienced significant depression, the

10

ALJ erred in not considering Plaintiff's "mild" mental impairments as part of the RFC. While an ALJ is not necessarily required to include functional limitations for non-severe impairments in the RFC, he is however, required to at least consider those impairments as part of the RFC analysis. The ALJ did not do so, and this is error.

As Plaintiff acknowledges, the ALJ found that Plaintiff had non-severe mental impairments of depression, generalized anxiety disorder and a history of borderline intellectual functioning. AR 13.

Plaintiff asserts that "there is evidence that Plaintiff's mental impairments caused functional limitations. For example, in December 2022, Plaintiff's Depression test indicated moderately severe depression [AR 438]. Plaintiff's anxiety test revealed severe anxiety [AR 438-39]. In January 2024, both his depression and anxiety testing showed severe depression and anxiety [AR 558-60]."

However, none of these diagnostics necessarily support a severe impairment or functional limitations, and Plaintiff does not squarely challenge the ALJ's step two non-severity finding. A severe impairment is one that significantly limits a claimant's physical or mental ability to perform basic work activities. 20 C.F.R. §§ 404.15920(c); 416.920(c). Examples of basic work activities include carrying out simple instructions, responding appropriately to usual work situations and dealing with changes in a routine work setting. . . 20 C.F.R. §§ 404.1522(b); 416.922(b). Plaintiff expected to see the RFC reflect that his abilities to perform such activities was limited, however he doesn't explain which activities were limited or how they were limited.

Plaintiff similarly emphasizes treatment notes of anxiety, depression, difficulty concentrating, easily startled, excessive worry, feeling down, depressed or hopeless (nearly every day), and insomnia. [AR 563]. Plaintiff states he was diagnosed with generalized anxiety disorder and depression [AR 566-67]. MSJ at 11. But these are symptoms and diagnoses, and Plaintiff provides no explanation of what functional limitations they support.

Plaintiff further contends that there is no medical support for the ALJ's finding regarding the "paragraph B" criteria. AR 13–14. In particular, Plaintiff explains that:

There is no medical opinion in the record related to Plaintiff's mental impairments. The State agency physician stated at the time of the initial review that there was

        insufficient evidence in the record to inform a medical opinion regarding Plaintiff's functional limitations [AR 63]. At the reconsideration level, the State agency physician stated that there was insufficient evidence to establish a medically determinable impairment (MDI), and thus did not render an opinion [AR 78].

However, the lack of an opinion in support of the RFC is not fatal. The RFC need not mirror any particular opinion, it is an assessment formulated by the ALJ based on all relevant evidence. *See* 20 C.F.R. §§ 404.1545(a)(3).

        With respect to the lack of opinion evidence regarding Plaintiff's depression and anxiety, Plaintiff suggests the ALJ should have ordered a consultative examination (CE) to resolve the evidentiary inadequacy. MSJ at 6. But the regulations state "the decision to purchase a consultative examination will be made <u>on an individual case basis</u> . . ." See 20 C.F.R. § 404.1519 (emphasis added). This doesn't mean the ALJ must order a CE whenever the record is lacking a medical opinion.

        In sum, Plaintiffs may not shift the burden to the ALJ to <u>disprove</u> disability as opposed to a Plaintiffs burden to <u>prove</u> disability. Moreover, it is a Plaintiffs primary responsibility to undertake the seeking of treatment, obtaining records of such treatment, and producing them. <u>See</u> <u>Bowen</u>, 482 U.S. at 146 (noting claimant is in a better position to provide information about his own medical condition); SSR 17-4p (noting that the Commissioner has some role in developing the evidentiary record, but claimants and their counsel have the "<u>primary responsibility</u>") (emphasis added); <u>Ukolov</u>, 420 F.3d at 1005 (9th Cir. 2005) ("claimant carries the initial burden of proving a disability."

        Plaintiff further contends that "Beyond the ALJ's failure to develop the record, even considering the ALJ's findings, he failed to properly consider Plaintiff's 'mild' mental impairments in the RFC." MSJ at 11. Plaintiff relies on the following case law and regulations. "In assessing RFC, the adjudicator must <u>consider</u> limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" <u>Buck v. Berryhill</u>, 869 F.3d 1040, 1049 (9th Cir. 2017) (emphasis added); 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2) ("We will <u>consider</u> all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not "severe,"… when we assess your residual functional capacity") (emphasis

12

added).

But this argument conflates "consideration" of impairments with "articulation." This is notable given other regulations, such as the regulations concerning medical opinion evidence, clearly distinguish between consideration and articulation. For example, the regulations indicate a variety of factors the agency will "consider" when evaluating opinion evidence, but supportability and consistency are only factors about which the agency indicates "we will <u>articulate</u> our consideration" thereof. 20 C.F.R. § 404.1520c (emphasis added).

Here, the ALJ clearly demonstrated awareness of the mental health diagnoses and symptoms Plaintiff suffered from, which Plaintiff does not contest. Indeed, the ALJ explained his finding at step 2 that Plaintiff's mental impairments were non-severe:

> The record also indicates diagnoses of hypertension, vitamin D deficiency, depression, generalized anxiety disorder, and a history of borderline intellectual functioning, but the undersigned finds that these conditions do not cause more than minimal restriction in the claimant's ability to work and are not severe impairments. <u>The undersigned considered all of the claimant's medically determinable impairments, including those that are not severe, when assessing the claimant's residual functional capacity.</u>
>
> . . .
>
> The record also indicates a history of borderline intellectual functioning based upon a prior file consultative examination . . . and depression and anxiety screening in December 2022 and January 2024 that indicated moderate to severe findings . . . However, the claimant declined treatment for mental symptoms and mental status exams are typically normal with full orientation, and normal insight, judgment, and memory . . .
>
> . . .
>
> In making this finding, the undersigned has considered the broad functional areas of mental functioning . . . known as the "paragraph B" criteria. The first functional area is understanding, remembering or applying information. In this area, the claimant has no more than a mild limitation . . . mental status exams indicated normal memory, insight, and judgement, and full orientation . . . The claimant also reported that he prepared meals, was okay at following instructions, could pay attention if he was sitting, shopped by phone and computer, and used public transportation (Exhibit 6E). AR 13.

Plaintiff does not squarely contest the ALJ's step 2 non-severity finding. Nor does Plaintiff

13

contest the accuracy and completeness of the ALJ's factual summary of the mental health evidence. Nor does Plaintiff contest inferences the ALJ derived from those facts.

Rather, Plaintiff dismisses this discussion as inadequate by arguing that after the ALJ performed the psychiatric review technique (PRT) at step 2, the ALJ did not explicitly revisit Plaintiff's non-severe mental impairments at the RFC stage. MSJ at 12. But this does not necessarily mean that the ALJ didn't "consider" those non-severe impairments at the RFC stage. At the conclusion of the first paragraph quoted above, the ALJ explicitly states, "The undersigned considered all of the claimant's medically determinable impairments, <u>including those that are not severe</u>, when assessing the claimant's residual functional capacity." AR 13 (emphasis added).

Although Plaintiff's point is well taken that the PRT at step 2 is distinct from the RFC analysis, nevertheless Plaintiff cites no controlling authority for the proposition that the ALJ must explicitly revisit non-severe mental impairments at the RFC stage when the ALJ covered them in detail at step 2 and stated they were considered as both severe and non-severe impairments alike at the RFC stage.

Thus, the ALJ committed no error with respect to Plaintiff's mild mental limitations.

**VIII. <u>Conclusion and Order</u>**

Substantial evidence and applicable law support the ALJ's conclusion that Plaintiff was not disabled.

Accordingly, it is ordered that:

1. Plaintiff's motion for summary judgment (Doc. 14) is **DENIED**.
2. Defendant's cross motion (Doc. 17) is **GRANTED.**
3. The Clerk of Court is directed to enter judgment in favor of Defendant Commissioner of Social Security an against Plaintiff.

IT IS SO ORDERED.

Dated:  **November 25, 2025**                              **/s/ Gary S. Austin**
                                                                                 UNITED STATES MAGISTRATE JUDGE